**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**TAMMY NIDIFFER,**

        **Plaintiff,**                      **CIVIL ACTION NO. 18-cv-11636**

        **v.**                               **DISTRICT JUDGE PAUL D. BORMAN**

**COMMISSIONER OF**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Tammy Nidiffer seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 15). Plaintiff has also filed a reply brief in support of her Motion for Summary Judgment. (Docket no. 16.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.**     **RECOMMENDATION**

        For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 11) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income in November 2015, alleging that she has been disabled since May 8, 2015, due to multiple sclerosis; fibromyalgia; migraine headaches; pain in her lumbar spine, legs, hips, and cervical spine; lumbar and cervical spine impairments; pinched nerves in her cervical spine; radiating pain and numbness in her arms and hands; depression; anxiety; and a thyroid condition.  (TR 15, 82-83, 206-19, 238.)  The Social Security Administration denied Plaintiff's claims on April 6, 2016, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ).  (TR 82-113, 150-51.)  On August 9, 2017, Plaintiff appeared with a representative and testified at a hearing before ALJ B. Lloyd Blair; she also amended her alleged onset date to May 21, 2015.  (TR 32-53, 233.)   The ALJ subsequently issued an unfavorable decision on November 3, 2017, and the Appeals Council declined to review the ALJ's decision. (TR 1-6, 15-26.)  Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 11 at 5-10) and the ALJ (TR 19-25) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony.  Defendant relies on the facts as summarized in the ALJ's decision. (Docket no. 15 at 4.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the original alleged onset date of May 8, 2015, and that Plaintiff suffered from the following severe impairments: paresthesia on the skin upper extremities, fibromyalgia, lumbar spondylosis, migraine headaches, acquired hypothyroidism, depression, and anxiety. (TR 18.) Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 19-20.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should do no standing or walking more than 2 hours per day; should have work that can be performed sitting or standing and jobs allowing a change in position every 30 minutes; she should never use ladders, scaffolds, or ropes; can occasionally use ramps, stairs, stoop, kneel, crouch, crawl, or balance; should avoid concentrated exposure to vibrations; can frequently but not constantly handle and finger; should avoid exposure including dangerous and unprotected machinery or heights; occasionally bend, twist, and turn at the waist or neck; she should do no commercial driving; never use foot controls; have only simple unskilled work with only occasional contact with co-workers, supervisors, and the public; no fast paced work or work where the pace is set by another.

(TR 20-24.) Subsequently, in reliance on a vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 24-25.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from May 8, 2015, through the date of the decision. (TR 16, 25-26.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal

3

standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

4

    (1)    Plaintiff was not presently engaged in substantial gainful employment; and

    (2)    Plaintiff suffered from a severe impairment; and

    (3)    the impairment met or was medically equal to a "listed impairment;" or

    (4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of

the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ violated the procedural aspect of the treating physician rule in evaluating the medical source opinion of Dr. Nawaf Murshed. (Docket no. 11 at 12-19.) It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner

6

has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Dr. Murshed completed a Physical Residual Functional Capacity Questionnaire regarding Plaintiff's impairments on September 8, 2017. (TR 593-96.) The ALJ summarized and assessed Dr. Murshed's opinion as follows:

> Dr. Nawaf Murshed of the Neuroscience Clinic completed a questionnaire (B14F). He stated that the claimant would be off task 15% of the time and would miss more than 4 days of work per month (B14F). This opinion is given little weight because it is not supported by Dr. Murshed's medical records. Dr. Murshed's physical examination revealed the claimant to be alert and oriented to name and place (B11/F2). She was in no acute distress (B11/F2). Although she had some

7

>tenderness, she had no tremors and intact gait (B11/F2). The claimant reported that her headaches were stable and medications helped with her pain (B11/F3). Overall, Dr. Murshed's medical records do not support the level of limitations he indicated in his questionnaire. Therefore, his opinion is given little weight.

(TR 22.)

Plaintiff asserts that the ALJ cited only one of Dr. Murshed's physical examinations of Plaintiff in support of the determination that Dr. Murshed's opinion was not supported by his medical records. (Docket no. 11 at 15.) Plaintiff argues that "[i]t cannot be said that the ALJ satisfied the procedural requirements of the treating physician rule when his support for rejecting the opinion is based off of one physical examination, especially when the physician who completed the opinion has treated the Plaintiff on a regular basis since 2015, which consisted of 16 visits." (*Id.*)

Plaintiff is correct that the ALJ only discussed the records from Dr. Murshed's July 18, 2017 examination of Plaintiff in the paragraph in which he discounted Dr. Murshed's opinion. Notably, that was the most recent examination performed by Dr. Murshed in the record evidence, and it was the closest in time to the opinion issued by Dr. Murshed almost two months later. But the ALJ also considered and discussed many of Dr. Murshed's earlier treatment records throughout his decision. For example, the ALJ cited the results of the electromyography (EMG) tests conducted by Dr. Murshed on September 3, 2015 and October 1, 2015, which revealed electrodiagnostic evidence of a chronic, mild right C5-C6 radiculopathy and a chronic, right L4-L5 polyradiculopathy, without ongoing denervation; the ALJ also cited the normal results of a September 3, 2015 electroencephalogram (EEG) test conducted by Dr. Murshed. (TR 21 (citing 416, 421, 424).) Additionally, the ALJ noted that Dr. Murshed's December 10, 2015 physical examination of Plaintiff revealed intact sensation, no tremors, and intact gait. (TR 21 (citing TR 335).) The ALJ also considered the records from Plaintiff's February 9, 2016 appointment with

8

Dr. Murshed, noting that although Plaintiff reported ongoing neck and back pain, she stated that her migraines had been less frequent and less intense since her hysterectomy. (TR 21 (citing TR 395).) The ALJ also pointed out that at Plaintiff's November 8, 2016 appointment with Dr. Murshed, examination revealed some tenderness, but she had intact sensation, no tremors, and intact gait. (TR 22 (citing TR 461).) Thus, when the ALJ's assessment of Dr. Murshed's opinion is read in conjunction with the ALJ's preceding discussion of Dr. Murshed's treatment records, the ALJ's reasons for discounting Dr. Murshed's opinion are sufficiently specific to make clear to any subsequent reviewers the weight that the ALJ gave to Dr. Murshed's opinion, and they therefore constitute good reasons under the regulations. The ALJ has sufficiently complied with the procedural aspect of the treating physician rule. Accordingly, Plaintiff's Motion should be denied with regard to the ALJ's assessment of Dr. Murshed's opinion.

Plaintiff also argues that the ALJ did not properly discuss the October 2015 MRI of her cervical spine. (Docket no. 11 at 17-18.) The ALJ considered Plaintiff's cervical spine MRI and recorded it in his decision by noting, "[a] cervical MRI revealed degenerative disease." (TR 21 (citing TR 427).) Plaintiff argues that this statement "is a mischaracterization of an important piece of evidence" because the MRI showed severe stenosis, disc bulging with thecal sac effacement, and disc osteophyte complex approaching the spinal cord. (Docket no. 11 at 17-18.) Indeed, the MRI results provide detailed findings regarding the condition of each section of Plaintiff's cervical spine. (TR 427.) For example, the MRI revealed a shallow bulging disc and thecal sac effacement but no overt cord compression at C3-C4. At C4-C5, the MRI revealed a shallow bulging disc effacing the thecal sac and moderate to severe bilateral foraminal stenosis. And at C5-C6, the MRI revealed a disc osteophyte complex effacing the thecal sac. The overall impression of Plaintiff's cervical spine was stated as "Multilevel *degenerative disease* as above.

Motion limited exam." (TR 427 (emphasis added).) Thus, the ALJ's statement that the MRI revealed "degenerative disease" mirrors the language used in the actual MRI results, and there is no mischaracterization of the evidence here.

To the extent that Plaintiff argues that the ALJ erred because he did not recite the detailed results of the MRI, Plaintiff's argument fails, as the ALJ is not required to recite the record verbatim in his decision. *See Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)) ("[I]t is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'"). *See also Fason v. Comm'r of Soc. Sec.*, No. 16-11070, 2017 WL 1316945, at *13 (E.D. Mich. Mar. 17, 2017), *report and recommendation adopted,* No. 16-11070, 2017 WL 1279334 (E.D. Mich. Apr. 6, 2017) ("An ALJ is not required to cite medical records verbatim in order to establish that their decision is supported by substantial evidence."); *McKinney v. Colvin*, No. 12-cv-162-KKC, 2013 WL 5468505, at *5 (E.D. Ky. Sept. 30, 2013) (citing *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009) ("[T]he ALJ is not required to cite the physician's test results verbatim."). Accordingly, the ALJ did not err in his discussion or characterization of Plaintiff's cervical MRI results.

## VI.    CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 11) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 15).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 7, 2019            s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: June 7, 2019            s/ Leanne Hosking
                               Case Manager